UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

LYUDMILA DOBBS,

                            Debtor.
-------------------------------------------------------------x
MARC A. PERGAMENT, ESQ., as chapter 7
trustee of the Estate of Lyudmila Dobbs,

                            Plaintiff,

    -against-

LYUDMILA DOBBS, JOHN DOBBS,
a/k/a JOHN DOBBS Sr. a/k/a
JOHN S. DOBBS a/k/a JOHN SCOTT DOBBS,
KURDINA, INC.,

                            Defendants.
-------------------------------------------------------------x

**NOT FOR PUBLICATION**

Chapter 7
Case No: 08-72469-ast

Adv. Pro. No.: 08-8181-ast

HON. ALAN S. TRUST, United States Bankruptcy Judge:

## MEMORANDUM OPINION DENYING
## CROSS MOTIONS FOR SUMMARY JUDGMENT

### Issues Before the Court and Summary of Ruling

        Pending before the Court are cross motions for summary judgment. The Plaintiff in this adversary proceeding is Marc A. Pergament, Esq., as the Chapter 7 Trustee (the "Trustee") for the estate of Lyudmila Dobbs ("Debtor"). The Defendants are the Debtor, her spouse or former spouse,[1] John Dobbs ("JD"), and Kurdina, Inc. ("Kurdina"), an entity owned or controlled by John Dobbs. All of the Trustee's claims arise out of the pre-petition transfers of certain real properties. The properties at issue are as follows: (a) property located at 148 Melville Road, South Huntington, New York

---

[1] The record is unclear as to whether Debtor and JD have been finally or lawfully divorced.

11746 (the "Melville Road Property"); and (b) property located at 34 Lieper Street, South Huntington, New York 11746 (the "Lieper Street Property") (collectively, the "Properties").

In his Complaint, the Trustee alleges the following: (I) under § 273 of the New York Debtor Creditor Law, the conveyance of the Debtor's 100% interest in the Properties was made without fair consideration by a person who is or will be thereby rendered insolvent; (ii) under § 275 of the New York Debtor Creditor Law, the conveyance of the Properties was made without consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature; (iii) the conveyance of the Debtor's 100% interest in the Properties to the Defendants Kurdina and/or John Dobbs under § 276 of the New York Debtor Creditor Law was made with actual intent to hinder, delay or defraud either present or future creditors are fraudulent conveyances and should be set aside; and (iv) the conveyances of the Properties are fraudulent as to a creditor whose claim has matured and should be set aside pursuant to § 278 of the New York Debtor Creditor Law.  The Trustee seeks to avoid the transfers of the Properties and recover the Properties pursuant to 11 U.S.C. §§ 544, 550(a) and 551, and requests that this Court enter a judgment under 11 U.S.C. § 363(h) authorizing and directing the Trustee to sell both the interest of the Estate and any interest of the co-owner/Defendants in the Properties.

In his response, JD asserts that any claim of the Trustee is precluded by a settlement JD had entered into with his chapter 7 trustee in his prior bankruptcy case, which settlement related to these same Properties.  JD seeks summary judgment based

on issue preclusion or claim preclusion.[2]

In his Cross Motion, the Trustee seeks summary judgment only as against JD, and only on the Trustee's claims under Sections 273 and 278 of New York Debtor Creditor Law ("DCL") to avoid the Debtor's transfers of the Properties.

For the reasons herein, this Court denies JD's request for summary judgment and denies the Trustee's Cross Motion for summary judgment.

## Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E) and (H), and 1334(b), and the Standing Order of Reference in effect in the Eastern District of New York.

## Procedural History

On May 13, 2008, Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. Thereafter, Marc A. Pergament, Esq., was appointed as Chapter 7 Trustee.

On August 12, 2008, the Trustee, as plaintiff, commenced this adversary proceeding against Debtor, JD and Kurdina (collectively, the "Defendants"), seeking to recover the alleged fraudulent conveyances of the Properties. JD is the current or former spouse of Debtor.

JD filed a letter response to the Trustee's complaint (the "Response") [dkt item 6]. By Order dated December 16, 2008 [dkt item 10], the Court determined, *inter alia*, that JD's Response would be treated as a motion for summary judgment, and that the

---

[2] JD is acting pro se. He does not use the legal terms "issue preclusion" or "claim preclusion," but the Court has construed his response to assert these arguments.

Trustee would have until January 9, 2009, to file his response to JD's motion for summary judgment.

The Court further held that it would consider JD's motion for summary judgment as under submission as of January 9, 2009, and would not require any further hearing thereon.

On December 31, 2008, the Trustee filed a Cross Motion For Summary Judgment and Opposition to Motion for Summary Judgment of Defendant John Dobbs (the "Cross Motion") [dkt item 11]. The Trustee also filed a Statement of Material Facts Upon Which There Is No Dispute, in accordance with Local Bankruptcy Rule 7056-1 [dkt item 12]. In his Cross Motion, the Trustee only sought summary against JD, presumably because, at that time, he was seeking default judgments against Debtor and Kurdina.[3] By Order entered January 12, 2009 [dkt item 16], this Court directed, inter alia, that, on or before January 30, 2009, the Trustee and JD may file and serve supplemental memoranda and/or briefs with respect to the Response and the Cross Motion, and further directed that, after January 30, 2009, the Court shall consider these cross motions for summary judgment as under submission.

No further pleadings were filed by either party by the January 30, 2009, deadline. Thus, JD has failed to respond to the Cross Motion as required by E.D.N.Y. LBR 2002-1 and has failed to respond to the Trustee's Statement of Material Facts Upon Which There Is No Dispute, as required by E.D.N.Y. LBR 7056-1.

---

[3] Both Kurdina and Debtor subsequently filed answers.

## Undisputed Facts

As set forth in the Trustee's Statement of Material Facts, there is no genuine issue of material fact as to the following facts:

1. Lyudmila Dobbs, the debtor (the "Debtor") in the underlying chapter 7 case, filed a voluntary petition pursuant to chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") on May 13, 2008 [Docket No. 1, Case 08-72469-ast].

2. Marc A. Pergament was appointed the interim chapter 7 trustee and thereafter did qualify as the permanent trustee [Court's Electronic Docket, Case 08-72469-ast].

3. The Trustee determined that the Debtor owned an interest in the real property commonly known as 148 Melville Road, South Huntington, New York (the "Melville Road Property"). The Trustee further determined that the Debtor conveyed her interest to Kurdina, Inc., a company owned and controlled by John Dobbs, by quitclaim deed dated March 25, 2003 [Exhibit "A"].[4]

4. The Trustee determined that the Debtor owned an interest in the real property commonly known as 34 Lieper Street, South Huntington, New York (the "Lieper Street Property"). The Trustee further determined that the Debtor conveyed her interest to Kurdina, Inc., a company owned and controlled by John Dobbs, by quitclaim deed dated October 14, 2003 [Exhibit "B"].

5. Kurdina, Inc., is an active corporation, registered in the State of New York. Kurdina, Inc., was incorporated by John Dobbs [Exhibit "C"].

6. John Dobbs ("JD") filed a voluntary petition pursuant to chapter 7 of the Bankruptcy Code on April 25, 2003 [Docket No. 1, Case 03-82843].

7. Neil H. Ackerman ("Ackerman") was appointed the interim chapter 7 trustee and thereafter did duly qualify as the permanent trustee [Case 03-82843].

8. Ackerman commenced an adversary proceeding against the same defendants in the instant action [Exhibit "D"].

9. Ackerman settled that action with John Dobbs [Exhibit "E"].

10. The Debtor has scheduled unsecured debt pursuant to Schedule "F" of her chapter 7 petition [Exhibit "F"].

---

[4] Exhibits as listed in this section refer to the documents attached to the Trustee's Statement of Material Facts [dkt item 12].

11. John Dobbs claims to be the owner of both the 34 Lieper Street Property and the Melville Road Property and receives rental income from these properties [Exhibit "G"].

12. The Debtor was obligated to pay rent to John Dobbs in the amount of $600.00 per month for her right to reside in the Lieper Street Property [Exhibit "G"].

## Legal Analysis
### The Standard for Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, incorporated by Bankruptcy Rule 7056(c), summary judgment should be granted to the moving party if the Court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (quoting FED. R. CIV. P. 56(c)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

In considering cross-motions for summary judgment, the Court must evaluate the merits of each motion independently of the other. *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993); *In re Rodriguez*, 50 B.R. 576 (Bankr. E.D.N.Y. 1985) ("[C]ross-motions for summary judgment do not warrant the court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed.")

A movant has the initial burden of establishing the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 322-23. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." *Id*. "When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion." *Smith v. Goord*, No. 9:06-CV-401(FJS/DEP), 2008 WL 902184 *4 (N.D.N.Y. Mar. 31, 2008) (citing *Anderson*, 477 U.S. at 250 n.4).

If the movant meets his initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Rather, it must present "significant probative evidence" that a genuine issue of fact exists. *Anderson*, 477 U.S. at 249 (quotation omitted). "There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor." *Cadle Co. v. Newhouse*, No. 01 Civ. 1777(DC), 2002 WL 1888716 *4 (S.D.N.Y. 2002) (citing *Anderson*, 477 U.S. at 249); *see also Anderson*, 477 U.S. at 250 (finding that summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict[.]").

As part of the independent evaluation of cross-motions for summary judgment, the court must draw all reasonable inferences against the party whose motion is under consideration. *Coach, Inc. v. Peters*, 386 F. Supp.2d 495, 497 (S.D.N.Y. 2005); *see also Considine v. Schachter* (*In re Schachter*), No. 05-9404, 2007 WL 2238293 (Bankr. S.D.N.Y. Aug. 1, 2007).

### **Avoidance under Bankruptcy Code Section 544(b)**

Bankruptcy Code Section 544(b) authorizes the Trustee to avoid "any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is

voidable under applicable law by a creditor holding an unsecured claim . . . ." 11 U.S.C. § 544(b)(1). The "applicable law" upon which the Trustee relies for his Cross Motion is set forth in DCL §§ 273 and 278 and is discussed below.

### Standards for Avoidance of Fraudulent Conveyances under New York Law

Under New York law, a transfer can be a fraudulent conveyance either as the result of actual intent by the transferor to hinder, delay or defraud, or as the result of the financial status of the transferor and the economic equivalence of the transaction. A constructively fraudulent transfer will occur where the transfer is made without fair consideration as defined by DCL Section 272 and (1) the transferor will be rendered insolvent (DCL § 273), or (2) the transferor intends or believes that he or she will incur debts beyond his or her ability to pay them as they mature (DCL § 275). *See In re Manshul Constr. Corp.*, No. 96B44080(JHG),2000 WL 1228866 *48-49(S.D.N.Y. Aug. 30, 2000)(citing *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F.Supp. 913, 936 (S.D.N.Y. 1995)). In general, the plaintiff bears the burden of proving the lack of fair consideration. *United States v. McCombs*, 30 F.3d 310, 324 (2d Cir. 1994).

DCL § 272 defines "fair consideration" as follows:

Fair consideration is given for property or obligation,

a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

DCL § 272 (McKinney's 2008).

Courts generally agree that the concept of fair consideration "can be an elusive one that defies any one precise formula," and that a determination as to whether fair consideration has been made turns on the facts of each specific case. *See McCombs*, 30 F.3d at 326.

In his Complaint, the Trustee also seeks recovery under DCL § 278. Section 278 sets forth the rights of creditors whose claims have matured, and provides:

> 1. Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,
>
> a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or
>
> b. Disregard the conveyance and attach or levy execution upon the property conveyed.
>
> 2. A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment.

DCL § 278 (McKinney's 2008).

### JD Has Not Established That His Settlement in His Prior Bankruptcy Case Should Have Preclusive Effect As Against the Trustee's Claims in This Action Under Either Issue Preclusion or Claim Preclusion

The doctrine of *res judicata*, or claim preclusion, prevents a party from suing on a claim which has been previously litigated to a final judgment by that party, and further precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action. The doctrine was created to address the

fundamental need of the judicial system for finality, such that a claim which parties had a full and fair opportunity to litigate should, after judgment, forever be put to rest as between those parties. *Montana v. United States,* 440 U.S. 147, 153 (1979). As the Second Circuit Court of Appeals noted in *Waldman v. Village of Kiryas Joel,* 207 F.3d 105, 108 (2d Cir. 2000), the second suit must involve not only the same parties or those in privity with them - the two suits must involve the same transaction or claim, which is determined by looking at whether the underlying facts are related in time, space, origin, or whether they form a convenient trial unit, and whether their treatment as a unit conforms with the parties expectations. *Id.*

Under New York law, a final judgment on the merits will create a preclusive effect, and to prevent a party from asserting claims that have been, or could have been, litigated in a prior action based upon the same essential facts. *See Smith v. Russell Sage College,* 54 N.Y.2d 185, 192-93, 445 N.Y.S.2d 68 (N.Y. 1981). New York applies a "pragmatic test," under which the doctrine of *res judicata* bars all claims based on the same essential facts, not withstanding any variance between the legal theory asserted or the request relief. *Id.* Courts consider whether the party asserting claim preclusion has shown that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *See Neshewat v. Salem,* 365 F. Supp 2d 508, 516-17 (S.D.N.Y. 2005), (citing *Monahan v. N.Y. City Dep't of Corrs.,* 214 F.3d 275, 285 (2d Cir. 2000).

Here, JD has not established that he is entitled to summary judgment based upon claim preclusion under either test. For example, JD has not established that the

Trustee here represents the same creditors as did the trustee in JD's 2003 bankruptcy case. Further, JD has not established that there exist no creditors in this case who would have standing under state law to complain of the transfers at issue here who were not also creditors in JD's 2003 bankruptcy case, and would also have had standing under state law to complain of the transfers at issue in this case. In addition, JD has failed to establish that there exist no creditors in this case who would have standing under state law to complain that one or more of the transfers at issue in this case was made with actual intent to hinder, delay or defraud either present or future creditors, who were not also creditors in JD's case. Consequently, summary judgment cannot be granted.

Further, there was no judgment entered in JD's 2003 bankruptcy case after a contested trial. JD settled with his bankruptcy trustee. JD has failed to provide any authority from which this Court could conclude that the order approving that settlement constitutes an adjudication for claim preclusion purposes.

As for the issue of collateral estoppel, or issue preclusion, it is well settled that such a doctrine applies where "(1) the issues in both proceedings are identical; (2) the issue in the prior proceeding was actually litigated and actually decided; (3) there was a full and fair opportunity to litigate in the prior proceeding; and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits". *A. W. Lawrence & Co., Inc. v. Sharon A. Burstein, et al.,* 289 B.R. 20, 24-25 (N.D.N.Y. 2003) (citing *Grieve v. Tamerin,* 269 F.3d 149, 153 (2d Cir. 2001)).

Again, no issue regarding transfers of the Properties were tried to conclusion in JD's 2003 bankruptcy case. JD settled claims that had been asserted. JD has failed to

provide any authority from which this Court could conclude that the order approving that settlement constitutes an adjudication for issue preclusion purposes.

Finally, while the claims at issue are related, they are not identical. The claims that JD settled with his trustee were, *inter alia*, based on the following allegations:

> There were three parcels of real property (collectively, the "Real Properties") which were owned by the Debtor or were put in the name of the Debtor's wife, Mrs. Dobbs, or his solely-owned corporation, Kurdina, as of the Filing Date: (a) real property located at 29 Lynch Street, Huntington Station, New York 11746 ("the Lynch Street Property"); (b) real property located at 148 Melville Road, South Huntington, New York 11746 (the "Melville Road Property"); and (c) real property located at 34 Lieper Street, South Huntington, New York 11746 (the "Lieper Street Property").
>
> All monies used to purchase all of the Real Properties were obtained from the Debtor's earnings or the Debtor's other monies, including but not limited to monies borrowed by taking out a mortgage (the "Mortgage Used to Obtain Monies to Buy Properties") on a parcel of Real Property owned by the Debtor, with the information which was given to the mortgagee as to ability to pay, showing that the Debtor's income and monies would be the sole source of payment of the mortgage (and that the mortgage could not have been obtained on the basis of Mrs. Dobbs' income, because she was unemployed and had no assets); and the Debtor was in fact the sole or primary source of all payments of all the mortgages; real estate taxes; utilities and other carrying costs and expenses of or associated with all of the Real Properties at all times prior to the Filing Date;
>
> Plaintiff's attorneys' search of the public records regarding the Lieper Street Property indicates that prior to the Filing Date, on or around March 28, 2003, Mrs. Dobbs signed a quit claim deed conveying the Lieper Street Property to the Debtor's solely-owned business Kurdina, which was recorded after the Filing Date, on or around October 14, 2003; and that Kurdina still owns the fee simple interest in the Lieper Street Property as of the date of this complaint.
>
> Plaintiff's attorneys' search of the public records further indicates that the Melville Road Property was then conveyed by Kurdina to the Debtor on or about December 29, 2003.
>
> Plaintiff's attorneys' search of the public records further indicates that on this same date, December 29, 2003, the Debtor conveyed the Melville Road Property to Frank Resta and Eric Resta (the "Unauthorized Post-Petition Transfer of the Melville Road Property") for $355,000.

[dkt item 11 Ex. C ¶ 3].

However, the Trustee in this case alleges, *inter alia*, as follows:

> By Quitclaim Deed dated March 25, 2003, the Debtor transferred her interest in the Melville Road Property to Kurdina for no consideration.
>
> By Quitclaim Deed dated October 14, 2003, the Debtor transferred her interest in the Lieper Street Property to Kurdina for no consideration.
>
> Despite the fact that the Debtor transferred her interest in the Lieper Street Property in 2003, she alone continues to remain obligated as to the mortgage executed in favor of America's Wholesale Lender and owned or serviced by Countrywide Home Loans.

[dkt item 1 ¶¶ 13-15].

Thus, the Trustee here focuses on the transfers as made by the Debtor, whereas the trustee in the JD case focused on the transfers made by JD. In addition, the JD case lawsuit involved an additional property, the Lynch Street Property, which is apparently not at issue here.

Therefore, JD's request for summary judgment will be denied.

### The Trustee Has Not Established That the Transfer of the Melville Road Property Was A Constructively Fraudulent Conveyance

In the Complaint, the Trustee alleges that the transfers of the Melville Road Property from Debtor to Kurdina and then from Kurdina to JD can be avoided under DCL § 273 as a constructively fraudulent conveyance. An essential element to proving a constructively fraudulent conveyance is that the transfer lacks fair consideration. As noted above, DCL § 272 defines fair consideration. The Trustee, however, has not provided any summary judgment evidence regarding the consideration exchanged between Debtor and Kurdina, or between Kurdina and JD, as relates to the transfers of the Melville Road Property. Therefore, this Court cannot analyze Kurdina's transfer to JD. That portion of the Trustee's Cross Motion seeking summary judgment as to the

transfer of the Melville Road Property will be denied.

### The Trustee Has Not Established That the Transfer of the Lieper Street Property Was A Constructively Fraudulent Conveyance

This Court reviewed a title report and recording receipt reflecting that, in October 2003, Debtor conveyed the Lieper Street Property to Kurdina for $0. However, this does not constitute evidence of a transfer to JD as a matter of law. The Trustee's Statement of Material Fact states that Kurdina "is an active corporation," and that he has "determined" that Kurdina is "owned and controlled by JD." These statements, though, do not constitute summary judgment evidence establishing JD's relationship with Kurdina whereby this Court should conclude the Debtor's transfer to Kurdina constitutes a transfer to JD. Moreover, the Trustee does not seek relief against Kurdina in his Cross Motion. It would, therefore, be inappropriate for this Court to rule on whether the transfer by Debtor to Kurdina is avoidable in the context of this Cross Motion.

Finally, there is no evidence of a transfer by Kurdina to JD.

That portion of the Trustee's Cross Motion seeking summary judgment as to the Lieper Street Property will be denied.

### Conclusion

Summary judgment will be denied as to both parties. A separate Order hereon will be entered.

Dated: Central Islip, New York
     March 13, 2009         **/s/ Alan S. Trust**
                                        Alan S. Trust
                                        United States Bankruptcy Judge